Hon. ISAAC F. REDFIELD, ⎱ ASSISTANT JUDGES.
Hon. DANIEL KELLOGG, ⎰

---

RICHARD F. ABBOTT *v.* ERASTUS S. CAMP.

*Inference of fact from report of auditor.* *Witness.*

It is never the province of a court of errors to deduce inferences of fact from a report of auditors. If facts are reported, from which it is claimed a contract should be implied, such inference must be made by the county court.

In an action brought to recover the price of labor and materials furnished, one, who claims that he is himself entitled, instead of the plaintiff, to receive payment of the amount, is a competent witness for the defendant; and so, also, is one, who is called as a witness to prove facts, showing that he is himself liable for the amount, instead of the defendant.

BOOK ACCOUNT. The suit was commenced in the county of WASHINGTON. Judgment to account was rendered, and an auditor was appointed, who reported the facts substantially as follows.

The plaintiff's account was in part for granite, quarried by him, for which he charged $1,75 *per* cubic yard, and for trimming granite, for which he charged twenty cents *per* foot. In the autumn of 1847 E. P. Jewett & Co. (a firm consisting of E. P. Jewett, M. Cottrill and L. S. Humphrey) had contracted to construct a section of the Vt. Central Rail Road, including three bridges across the Winooski and Dog rivers; and at that time the plaintiff, being the owner of a granite quarry in Barre, applied to Jewett & Co. for a contract to quarry and furnish the stone for the masonry of the bridges, or a part of it. Jewett & Co. declined to contract with him, for the alleged reason, that he was irresponsible. Soon after this the plaintiff made an arrangement with one Kimball, that Kimball should take the contract with Jewett & Co. for quarrying two hundred yards of stone, and should furnish a pair of oxen and make all the necessary advances for iron, steel, help, &c., and with such aid the plaintiff was to quarry the stone. Under this arrangement with the plaintiff, Kimball contracted with Jewett & Co. to furnish them, at or near the plaintiff's quarry, two hundred yards of granite, and they agreed to pay him therefor $1,75 *per* cubic yard. It was farther agreed between the plaintiff and Kimball, that Kimball should apply the avails of the contract to repay his advances, and to pay a debt of about $70,00, due to him from the plaintiff, and should pay the residue to the plaintiff. The stone was quarried, to an amount exceeding two hundred yards, during that autumn and winter, the plaintiff doing most of the labor, and Kimball making advances to an amount exceeding $300,00; and Kimball purchased at sheriff's sale, about the time this quarrying commenced, a quantity of stone upon this quarry, which were soon commingled with those quarried by the plaintiff. In the winter of 1848 Jewett & Co. made a contract with the defendant to construct the masonry of the bridges; but the terms of the contract were not arranged until October 16, 1848, when they were reduced to writing. At the time of the negotiation, and until the contract was reduced to writing, the understanding between the defendant and Jewett & Co. was, that the defendant should take the stone, for which Jewett & Co. had contracted with Kimball and others, upon the terms and conditions of the contracts made by Jewett & Co., and should proceed to draw and cut the stone, and that, if they did not thereafter define farther the terms, the defend-

ant should receive a reasonable compensation for his labor,—both parties, however, expecting a more definite contract. The defendant drew from the plaintiff's quarry three hundred and three yards of stone, which included the stone quarried by the plaintiff and Kimball, as above stated, and some of the stone which Kimball had purchased at sheriff's sale; and about twenty yards were quarried by the plaintiff in the spring of 1848. Jewett & Co. paid to Kimball $300,00 upon their contract with him; but no settlement has been made between them. In February, 1848, it was agreed between the plaintiff and Kimball and French & Walker, merchants at Barre, that whatever balance should remain in Kimball's hands, or be due for stone from Jewett & Co., after paying Kimball what should be due to him, should be applied in payment for goods to be purchased by the plaintiff of French & Walker. The plaintiff obtained goods of French & Walker to the amount of about $100,00, which were charged by them to Kimball, and the plaintiff always represented to French & Walker, and to Kimball, until all the stone were drawn by the defendant, that a sufficient balance to pay French & Walker was coming from Jewett & Co. for the stone. The claim of French & Walker remains unpaid. After the defendant had drawn from the plaintiff's quarry some more than two hundred yards of stone, the plaintiff signified to Kimball a desire to ascertain who was responsible to them for the stone beyond the two hundred yards, and requested Kimball to see Jewett & Co., saying that "the Camps were not worth a dollar." Kimball called upon Jewett & Co., and they agreed "to be responsible for all the stone, that should be drawn from plaintiff's quarry." And Kimball has ever claimed, that Jewett & Co. were responsible directly to him for all the stone, until he should be reimbursed and French & Walker paid; and Jewett & Co. have been ready to account for all the stone drawn from the plaintiff's quarry, as soon as the amount could be ascertained. And the auditor reported, that he did not find any contract on the part of the defendant to pay for the stone.

In the winter of 1848 the plaintiff made application to Jewett & Co. to cut, or trim, the stone quarried at his quarry, and they told him, that he might proceed and cut what he chose, and they would pay him therefor the lowest price, that they should have offered for like labor from any other person; but no quantity was named. Un-

der this arrangement the plaintiff cut stone at the quarry; and his right so to do was never countermanded by Jewett & Co. The plaintiff admitted, at the hearing, that all the stone cut by him previous to April 11, 1848, was done under the contract with Jewett & Co., but claimed, that at that time he made a contract with Zebina C. Camp acting on behalf of the defendant, to cut at twenty cents *per* foot. In reference to this claim, the facts were reported as follows. In February, 1848, the defendant, on account of the stone not being got out at suitable places to load, commenced procuring stone at another quarry; and on the eleventh of April, 1848, Z. C. Camp, for the defendant, met the plaintiff and Kimball at the quarry, to make arrangements to have the stone drawn out from the quarry; and the plaintiff and Kimball then renewed their objection to do it, and agreed, that there should be no farther hindrance in that matter. The defendant at this time had several men at the quarry trimming stone at twelve and a half cents *per* foot, by contract, the defendant finding tools, and at this time conversation was had between Z. C. Camp and the plaintiff, respecting the plaintiff's trimming stone, and Camp told him, that " he could go on trimming stone as before." Z. C. Camp had authority to make any contract in behalf of the defendant, in regard to quarrying and trimming stone. The plaintiff trimmed, after April 11, 1848, about two hundred feet of stone, which was drawn away by the defendant and was used in constructing the bridges. And the auditor reported, that, not being satisfied of any farther contract, he disallowed these items. Other items of the plaintiff's account were allowed, and an account was allowed, presented by the defendant, and the auditor reported, that there was due from the plaintiff to the defendant, to balance their book accounts, $1,01.

At the hearing before the auditor, Kimball, Jewett and Humphry were offered as witnesses on the part of the defendant, and were objected to by the plaintiff on account of interest; but the objection was overruled, and they were admitted to testify.

The county court rendered judgment for the defendant upon the report. Exceptions by plaintiff.

*Peck & Colby* and *Smith* for plaintiff.

*J. A. Vail* and *C. W. Prentiss* for defendant.

Abbott v. Camp.

By the Court. It seems to us, the auditor has found substantially, that the articles disallowed in the plaintiff's account, were furnished upon the credit of Jewett & Co., and that no contract, either express or implied, existed in regard to them between these parties. If it were possible to imply a contract from the facts found, that could only be done by the county court. It is never the province of a court of errors to deduce inferences of fact from a case agreed, a special verdict, or a report of referees, or auditors. From the judgment rendered by the county court, we must conclude, they did not intend to make any such inference.

Although Kimball and Jewett and other witnesses standing in the same relation might have had an interest in the subject matter of this suit adverse to the plaintiff, it is impossible for us to see, how the result of this suit can have any just or legal operation upon any suit, in which these witnesses shall be parties. We think, therefore, that they were properly admitted. In the case of *Dennison v. Hubbard*, 5 Vt., 496, the witness rejected stood more in the situation in which these witnesses would, if offered on the part of the plaintiff.

As to the quarrying of the stone, the auditor says, he finds no contract on the part of the defendant to pay for it, and that it was done in pursuance of the contract between Kimball and Jewett & Co. This would seem to be as decisive of the claim, as language is ordinarily expected to be. As to the trimming of the stone, the auditor finds an indefinite contract between the plaintiff and Jewett & Co., which was never countermanded, and which would of course include the whole trimming, but reports certain facts, which have reference to some arrangement, on this subject, between the plaintiff and the defendant,—but nothing which would fully justify any such conclusion ; and finally concludes by saying, that, not being satisfied of any *farther contract*, he disallowed this charge, (as against the defendant,) leaving it to stand against Jewett & Co. The report seems to be sufficiently intelligible. Judgment affirmed.